**MFA MUTUAL INSURANCE COM-PANY, Plaintiff,**

v.

**Agbird LOVINS, Administrator of the Estate of E. C. McKelvey and Lorene McKelvey, Deceased, Defendant.**

**No. J–64–C–63.**

United States District Court
E. D. Arkansas,
Jonesboro Division.

Dec. 15, 1965.

G. D. Walker, Frierson, Walker & Snellgrove, Jonesboro, Ark., for plaintiff.

Gus R. Camp, Piggott, Ark., Peter A. Martin, Olathe, Kan., for defendant.

GORDON E. YOUNG, District Judge.

This is an action by the plaintiff insurance company against the Administrator of the Estate of E. C. and Lorene McKelvey, seeking a declaratory judgment that on account of alleged breaches of the policy terms and provisions of a certain insurance contract plaintiff is not indebted to the defendant. Defendant has filed a cross complaint seeking judgment against the plaintiff in the sum of $20,000 plus penalty and attorneys' fees. This court has jurisdiction by reason of diversity of citizenship and the requisite amount in controversy.

The facts are not in dispute.

On September 24, 1963, plaintiff issued its automobile liability insurance policy covering a certain truck to Mr. McKelvey. Among other coverage in the policy was "uninsured motorist insurance" under which the insuring agreement provided as follows:

"1. Coverage E — Uninsured Motorist Coverage — The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an insured automobile because of bodily injury, sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, that determination as to whether the insured or his legal representative is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured or his legal representative and the company or, if they fail to agree, by arbitration."

By the terms of the policy the limits of liability under the uninsured motorist coverage were $10,000 for one person or a total of $20,000 for a single accident.

On March 13, 1964, while the policy was in effect, the McKelveys were passengers in the insured vehicle and were involved in a collision with another vehicle operated by one W. D. Hames, who had no liability insurance and was an uninsured motorist within the meaning of the policy. Both of the McKelveys, being passengers in the vehicle, were entitled to the protection of the uninsured motorist coverage. As a result of the collision, both of the McKelveys were instantly killed, and Hames died shortly thereafter.

Plaintiff and the defendant Lovins, as the Administrator of the Estates of the McKelveys, were unable to agree upon the amount of damages sustained by the respective estates on account of the death of the McKelveys, and the Administrator refused to submit the matter to arbitration as provided by the policy. It is conceded by the plaintiff that under Arkansas law the arbitration provision is unenforceable.

The uninsured motorist insurance provision of the policy also contained the following provision:

"4. Exclusions—Coverage E. does not apply: * * *

(b) to bodily injury to an insured with respect to which such insured or his legal representative shall, without the written consent of the Company, make any settlement with, or prosecute to judgment any action against any person or organization who may be legally liable therefor;"

On August 31, 1964, defendant as such administrator filed suit in the Circuit Court of Clay County, Arkansas, against the Administrator of the Estate of Hames (the uninsured motorist) for damages on account of the death of the McKelveys. Counsel for the defendant Lovins gave notice to plaintiff of the

filing of that action. The Administrator of Hames' Estate filed an answer and cross complaint against defendant, and notice of the filing of such cross complaint was also given to plaintiff.

Because of its liability coverage under the policy plaintiff accepted the defense of the cross complaint.

After plaintiff received notice that defendant had filed suit against the Hames estate, the claims manager of plaintiff wrote defendant's counsel calling attention to the exclusionary clause in the policy which said that there was no coverage under the uninsured motorist clause if the insured or his legal representatives should, without the written consent of plaintiff, prosecute to judgment any action against any person who might be legally liable for damages to the insured. The letter went on to say:

"You are hereby notified if you prosecute this claim to a conclusion without this Company's permission, you are waiving any rights of recovery under the terms of the policy and we want to go on record definitely reserving all rights of the Company under the policy and we must insist upon a very strict compliance with the terms of the contract.

"If the lawsuit in the Circuit Court for the Eastern District of Clay County, Arkansas, is prosecuted to a judgment, this Company feels there will be no coverage under this policy as herein set out."

Subsequently, a motion for summary judgment was sustained as to the Hames cross complaint and it was dismissed by the court. At that time plaintiff withdrew from further participation in the action and the case proceeded to trial on the complaint of the Administrator of the McKelveys against the Administrator of Hames. As stated in plaintiff's brief, prior to the commencement of the trial the plaintiff, by its counsel in open court, warned defendant through his counsel that the prosecution of the action against the Hames Estate would be considered to be a violation of the policy terms, but,

notwithstanding, defendant did proceed to trial which resulted in a judgment in favor of Lovins against the Hames Estate in the total sum of $23,206.

Counsel for the Administrator of the Hames Estate did not appear for the trial —and, as provided by Arkansas law, a jury was empanelled and testimony was offered, resulting in the jury verdict described above. No parties or counsel adverse to defendant participated in that proceeding.

Plaintiff then filed this action, alleging that demand would shortly be made upon it for the payment of $20,000 under the policy, and asking for declaratory judgment holding that it was under no obligation to the defendant. Defendant's cross complaint followed.

Several issues are presented for the Court's decision. None of them have been considered by the Supreme Court of Arkansas.

I. Can the company forbid its insured to sue the tort-feasor upon penalty of being deprived of his contract insurance coverage?

At the outset it may be observed that the law on the subject of uninsured motorist coverage generally is in an unsatisfactory and undeveloped state. This clause, now included almost as a matter of course in automobile liability insurance policies, is relatively new and the court decisions dealing with the problems in this area are few. Some if not most of the major problems stem from the fact that where the insured and his insurance company cannot agree, a basic conflict of interests arises between the insured and his carrier. Thus under the contract of liability insurance the company may be obligated to defend the insured against allegations of negligence against him and at the same time in the protection of its own interests assert that its insured was negligent if the insured makes a claim under the uninsured motorist clause of his policy. These problems are made particularly difficult in states where, like Arkansas, the arbitration clause found in these policies is unenforceable.

The closest case to the one at bar the Court has been able to find is Boughton v. Farmers Ins. Exchange, 354 P.2d 1085, 79 A.L.R.2d 1245 (Okl.1960).

There, under a policy apparently identical with the one here, the insured motorist instituted action and obtained judgment against the uninsured motorist, and then after demanding payment from her insurance company under its uninsured motorist clause, brought this action against her insurance company. In her complaint, plaintiff, after alleging the policy, the accident, and the judgment against the uninsured motorist, alleged that she had notified her company of the accident and her injuries, and attached to such letter a copy of the complaint to be filed against the uninsured motorist; that the insurance company was afforded an opportunity to participate in the prosecution or defense or trial of said action but it failed or refused to do so. As here, the insurance company advised its assured that if she settled or reduced to judgment her action against the uninsured motorist she would be violating the terms of the policy and that it, the company, would refuse to pay any money either by settlement or arbitration if she pursued that action to judgment.

The trial court sustained the defendant insurance company's demurrer to the complaint. It found that the arbitration agreement was void but held that the judgment obtained by her against the uninsured motorist was not binding upon the insurance company for the reason it was not a party to that action; and that the insurance company was not estopped to retry or relitigate the question of liability of the uninsured motorist or plaintiff's damages.

Upon appeal the Supreme Court of Oklahoma reversed. After holding that the arbitration provision was unenforceable in Oklahoma it considered the question of what was the effect, if any, of the policy provision forbidding the assured to recover judgment against the tort-feasor without the insurance company's consent. The court said, "In as much as the insurer agreed to pay all sums insured shall be legally entitled to recover from an uninsured motorist and the 'no action' provision would restrict insured from enforcing these rights, we hold such provision to be void."

The case of Levy v. American Automobile Insurance Co. (1961), 31 Ill.App.2d 157, 175 N.E.2d 607, construed such a clause as is involved in the case at bar. There the parties had failed to agree and the insured declined to arbitrate. The insurance company refused to grant its consent for the insured to sue the uninsured tort-feasor unless the insured submitted the issue of the company's liability to the insured to arbitration. The court held that the insurance company had no right to demand arbitration and said to condone this improper use of the "written consent" provision would in effect force the insured to submit the entire controversy to arbitration, and compulsory arbitration is invalid in Illinois.

In State ex rel. State Farm Mut. Auto Ins. Co. v. Craig (Mo.App.1963), 364 S.W.2d 343, 95 A.L.R. 1321, the insured motorist sued the uninsured tort-feasor. The insurance company sought to intervene in that case on the theory that it might be bound by a judgment against the latter. In Missouri the compulsory arbitration clause is not enforceable.

In discussing the "consent" provision in the policy the court said:

"We think further that the 'consent' exclusion as a bar to suit must fall along with the arbitration clause. The exclusion would reasonably be applicable in situations where arbitration is required; but, where this is not the case, it would be against public policy to permit a prohibition against resort to the courts for remedy without the consent of the person ultimately liable."

This Court has little doubt that the Supreme Court of Arkansas would hold that the clause forbidding the injured insured to sue the tort-feasor without the consent of his insurance company, upon penalty of the insured

losing his contract coverage, is against public policy and void.

II. Is the insurance company, not a party to the suit by the insured against the tort-feasor, bound by determination of liability and the amount of damages recovered in that suit?

In Boughton v. Farmers Ins. Exchange, supra, after determining the arbitration provision to be unenforceable and the "no action" clause void, the question remaining to be decided by the court was whether the insurance company could relitigate the question of liability of the uninsured motorist and the amount of damages sustained by plaintiff. The court said:

"Exchange was not a party to the action against the uninsured motorist and it is apparent the judgment rendered therein is not binding upon Exchange in a sense that is a judgment against Exchange. However, this action is not for the collection of that judgment, but an action to recover under the terms of the policy which provides the insurer agrees 'to pay all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile.'

\*   \*   \*   \*   \*   \*

"We therefore conclude the question of damages and legal liability of the uninsured motorist may not be relitigated in the present action and that the judgment against the uninsured motorist is conclusive of the issues therein determined, subject, however, to any defenses [policy] Exchange may have against it."

When the court in Levy v. American Automobile Insurance Co., supra, considered this aspect of the problem the court said:

"The defendant's basic premise is that proof of a right to recover and the amount recoverable may be made in an action on the contract directly against the insurance company and that no other action is necessary or relevant. We are not informed as to how this could be, for the plaintiffs have no cause of action against the company on the policy endorsement until it is first determined that they are legally entitled to recover damages from the owner or operator of an uninsured automobile. Indeed, this argument is directly contrary to the express provisions of the endorsement, which provide that 'the determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the Company, or if they fail to agree (and the insured so demands), by arbitration.'

"The parties failed to agree and the plaintiffs' attorney declined to submit the dispute to arbitration. The only other recourse available was to obtain a judgment against the third party, \*   \*   \* "

In State v. Craig, supra, in holding that the insurance company should be permitted to intervene as a matter of right in a suit instituted by the insured against the uninsured motorist the court said that the few cases involving the uninsured motorist coverage reaching the court "indicate that the insurer 'may be bound' by a judgment rendered against the uninsured motorist in the sense it may not dispute the liability of the uninsured motorist or the amount of damages."

The author in 15 S.C.L.Rev. 739, 750 (1963) note 50, says, "The courts are in general agreement that the insurance company is bound by the judgment obtained against the uninsured motorist by the insured motorist."

In a comment appearing in 1962 Wash. U.L.Q. 134, page 143, in discussing the South Carolina case Childs v. Allstate Ins. Co., 237 S.C. 455, 117 S.E.2d 867 (1961), where the insured obtained judgment against the uninsured motorist without the company's permission and

then recovered from his insurer who defended on the ground that it had not given permission to sue as required by the policy, the author said:

"It is submitted that this is the only just result where arbitration clauses are unenforceable. A further conclusion following from such position is that if liability and damages may not be fairly determined by arbitration, a judgment against the uninsured motorist by the insured must necessarily be binding upon the company upon both issues. This was exactly the result reached in Oklahoma in Boughton v. Farmers Ins. Exchange. * * * It is submitted that the insurance company, in a state which will not enforce mandatory arbitration agreements, would be well advised to simply give permission to its insured to seek judgment against the uninsured motorist and then intervene in the action as a third party defendant. It could thereby actively participate in litigating both liability and damages."

Plaintiff states in its brief that there is a conflict in the authorities on this question. It concedes that Boughton holds against its position, but says that the contrary position is taken in Levy. But Levy does not support plaintiff, as is shown above.

Plaintiff also cites Montgomery v. M. F. A. Mutual Ins. Co., 250 F.2d 357 (8th Cir. 1957), but this case is easily distinguished. In this case, which was appealed from this Court, the insurance company had in its policy a clause binding the company to pay the insured the amount of any unsatisfied judgment procured by the insured for damages because of bodily injuries.

The policy provided, page 358, that such judgment must have been rendered by a court of record (1) after actual trial upon the merits of the case and contested in good faith by the judgment debtor, or (2) upon default of the judgment debtor, provided that the company was given at least twenty days' notice in writing prior to the rendition of the default judgment of the date, time and place of the rendition of the judgment; and provided further that, prior to rendition of such default judgment testimony of attending physicians as to the nature and extent of the injuries must have been presented and heard by the court and that seasonable notice of that hearing should be given the company, at which hearing the company might appear by counsel and cross examine the witnesses and present testimony.

The policyholder secured a default judgment and then sued his insurance company. The court found that he had complied with none of these policy provisions and entered judgment for the insurance company. These facts are completely different from those in the case at bar. Here, the insurance company was informed that its insured was asserting a claim under the uninsured motorist clause and was put on notice of the filing of the complaint by the insured against the tort-feasor by the insured sending the company a copy of the complaint. Thus, here the insurance company had ample opportunity to take such steps as were necessary to protect its interests. Instead, it took none—it simply forbade its insured to proceed with the suit.

It is true that in Wortman v. Safeco Insurance Company of America, 227 F. Supp. 468 (E.D.Ark.1963), this Court held that under the uninsured motorist clause a policyholder could maintain an action against his insurance company without first obtaining a judgment against the uninsured tort-feasor.

In that case a complaint had been filed in State court by one of the parties involved in the automobile accident against both the uninsured and the insured motorist. During the pendency of that action the insured motorist, whose policy included an "uninsured motorist clause," filed suit in this Court against his insurance company for damages on account of his injuries. His insurance company (Safeco), relying on the clause in the policy that it was required to pay only that amount which "[t]he insured shall be legally entitled to recover as damages

from the owner or operator of an uninsured automobile * * *" contending that the plaintiff's damages had not been determined, and further that such determination· was a condition precedent to the prosecution of his case—in other words, the insurance company there took the very opposite position to the one taken by the company in the case at bar.

This Court rejected Safeco's contentions, after holding that the arbitration clause was unenforceable and void in Arkansas (which was conceded by the parties, as here). The Court said:

"It appears that both the defendant and plaintiff may be bound by the findings of fact in the Pulaski County Circuit Court, and if this plaintiff recovered a judgment against the uninsured motorist there, he would be entitled to a judgment—limited, of course, by the policy limits—against the defendant, subject to policy defenses." .(Citing Boughton v. Farmers Ins. Exchange, supra.)

As to the contention by Safeco that the damages to which plaintiff was entitled must first be determined as a requisite to suit against his insurance company, this Court said:

"The provisions of the contract itself refute this contention * * *. Since arbitration is impossible in Arkansas, some other method must be used to determine whether the uninsured motorist is legally liable to the insured * * *. I see no reason why this Court cannot make this determination as well as an arbitrator."

The Court then went on to say:

" * * * [s]ince the insured cannot be made to arbitrate, and the contract suggests that the intention of the parties is to determine the issues between themselves, it appears to the Court that the intentions of the parties will best be served by an action in a court of law by the insured against the insurer; the court in effect, becomes the arbitrator."

It thus appears that in this case this Court recognizes that under the authority of Boughton, both the insurance company and its assured might be bound by an action in State court between the insured and the uninsured motorist, and expressly held that the insured motorist could maintain an action against his insurance company without first securing judgment against the uninsured motorist. That case, however,· did not hold that the insured motorist might not sue the uninsured tort-feasor directly; in fact, the opinion intimates otherwise.

Direct action by the insured against his insurance company has the advantage of simplicity. Also, it eliminates some of the conflicts of interest that arise when the insurance company, having to defend the insured against charges of negligence, in the same proceeding (perhaps, as some have suggested, by different counsel) assert negligence on the part of its insured in its defense under the uninsured motorist clause.

But this is a dilemma the insurance company has brought upon itself in incorporating the uninsured motorist clause in the same policy whereby it agrees to defend its assured from allegations of negligence by another.

The weight of such authority as exists holds that a judgment recovered by the insured against the uninsured tort-feasor is binding upon the insurance company of the insured both as to liability and amount of damages. In the absence of any decision upon the subject by the Supreme Court of Arkansas, this Court feels that it should follow the majority view, and it answers the question propounded under Roman numeral II in the affirmative.

It should be made plain that this case does not overrule Safeco. It holds, until the Supreme Court of Arkansas rules otherwise, that under the uninsured motorist clause the insured may either sue his insurance company direct or bring suit against the uninsured tort-feasor. If the latter course is followed, if the insured has complied with the valid conditions of his policy and if the insurance

company has ample notice of the bringing of such action and an opportunity to participate in the proceedings to protect its legitimate interests it will be bound as to liability and the amount of damages.

It should be emphasized again that here the insurance company made no effort to intervene in the action between its insured and the tort-feasor. This Court finds it difficult to believe that the State court would not have permitted plaintiff to intervene in the proceedings there upon a showing of plaintiff's interest in the controversy. Certainly plaintiff should have made the effort.

Lest the holding here be misunderstood, if the insured had failed to comply with the valid provisions of the policy or if plaintiff had had no seasonable notice of the State court proceeding or if plaintiff had sought to intervene and been refused, the result here might be entirely different.

III.   If defendant prevails, the determination of the amount due.

 · Plaintiff contends that in any event it is not liable for any damages on account of the wrongful death of the McKelveys, seeking to make a distinction between damages that could have been asserted by the McKelveys, had they survived, and damages resulting from their deaths.

The Court sees no reason to make any such distinction. The policy provides:

> "The Company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injuries, sustained by the insured  *  *  *"

Ark.Stat.Ann. § 27–906 (1962 Repl.) provides that when the death of a person is caused by a wrongful act the person who would be liable if death had not resulted shall be liable to an action for damages notwithstanding the death of the person injured, and further that the cause of action survives the death of the person wrongfully causing the death of another.

The next section of the Statutes, 27–907, permits and even requires that such action shall be brought by and in the name of the personal representative of the deceased person if one shall have been appointed.

The Court concludes, therefore, that damages for the deaths of the insured resulting from their bodily injuries which are recoverable by their personal representatives are covered by the uninsured motorist clause.

The complaint will be dismissed. Judgment will be entered in favor of defendant on his counterclaim in the amount of $20,000 (the maximum coverage provided by the policy), plus the statutory 12% penalty and a reasonable attorney's fee.